UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 12-50076 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | SENTENCING |
| | ) | MEMORANDUM |
| MATILDA IRON TEETH, | ) | AND ORDER VACATING |
| a/k/a Matilda Red Shirt, | ) | ONE CONVICTION |
| a/k/a "Tilly," | ) | |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

Because the court departed in substance based upon legal, not factual, grounds at the sentencing in this matter, this memorandum is provided to counsel and the defendant so that the court's legal authorities and rationale are set forth.

## BACKGROUND

Matilda Iron Teeth, also known as Matilda Red Shirt,[1] was indicted on two felony counts of assault: assault with a dangerous weapon, in violation of 18 U.S.C. §§113(a)(3) and 1153; and assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 113(a)(6) and 1153. The charges arose from Ms. Red Shirt stabbing George Brewer repeatedly with a knife and

---

[1]The defendant prefers to be known as Matilda Red Shirt. Accordingly, the court adopts this name throughout the memorandum.

1

causing serious injuries to Mr. Brewer. The original felonies each carried a maximum possible penalty of ten years imprisonment, a $250,000 fine, and three years of supervised release.

Pursuant to a written plea agreement, Ms. Red Shirt pleaded guilty to two separate Class B misdemeanors: assault by striking, beating or wounding, in violation of 18 U.S.C. § 113(a)(4); and simple assault, in violation of 18 U.S.C. § 113(a)(5). Each of these offenses is punishable by up to six months imprisonment or probation up to five years. Supervised release is not available following a term of incarceration on a Class B misdemeanor. The plea agreement provided for Ms. Red Shirt to receive the maximum punishment for each offense of six months imprisonment and the agreement specified that the sentences were to run consecutively, for a total period of confinement of one year.

The written plea agreement was accompanied by a written factual basis in support of the plea. In pertinent part, that factual basis provided as follows:

> On February 26, 2012, [Ms. Red Shirt] was at her house in Pine Ridge drinking with the victim, George Brewer, and others. [Ms. Red Shirt] and Brewer began fighting about keys and a phone. [Ms. Red Shirt] went to the kitchen and retrieved a large, wooden-handled kitchen knife. Brewer was sitting on a bed located in the living room area, when [Ms. Red Shirt] stabbed him two times in the chest. After police were called, and upon their arrival, Brewer remained on the bed and was bleeding profusely from his wounds. A large kitchen knife matching the description given by several witnesses was found in a garbage can inside the house and had blood on the blade. Brewer was transported via ambulance to the IHS Hospital and was airlifted to Rapid City Regional Hospital. Upon arrest,

2

[Ms. Red Shirt] had blood on her hands. She claimed to the responding officers that the victim was beating her and she stabbed him in self defense, but eyewitnesses do not corroborate her self defense claim; to the contrary, witnesses actually report that the defendant was "always beating" the victim.

Brewer required surgical intervention at Rapid City Regional [Hospital] to treat the stab wounds. He had a large amount of blood in his abdomen and had an actively bleeding omental artery. The stab wounds were repaired with staples. He remained in [the] Intensive Care Unit overnight following the surgery.

[Ms. Red Shirt] is an "Indian" under the provisions of 18 U.S.C. § 1153 in that she is an enrolled member of the Oglala Sioux Tribe. The offense occurred in Pine Ridge, in Shannon County, South Dakota, in Indian country, which is within the exterior boundaries of the Pine Ridge Indian Reservation. This location is "Indian country" within the provisions of 18 U.S.C. §§ 1151 and 1153.

See Docket No. 27.

## DISCUSSION

At the outset, the court notes that it finds the sentence provided for under the parties' written plea agreement to be appropriate. Under 18 U.S.C. § 3553(a), the court must try to avoid sentencing disparities between Ms. Red Shirt and other similarly-situated defendants. Ms. Red Shirt was lucky indeed to escape a felony conviction for this very serious crime. In addition, a one-year term of incarceration is appropriate given Ms. Red Shirt's own history of violence and alcohol abuse. The offenses charged in this case do not stand out as an anomaly in Ms. Red Shirt's history.

3

Usually, the court trusts to the adversary system and does not look behind the plea agreement. Attorneys know much more about the facts of their cases than the court does. If both sides are represented and an arms-length negotiation takes place, that is usually sufficient to ensure an appropriate bargain.

However, the court cannot impose a sentence that is unlawful. The court cannot turn a blind eye to a sentence that the court believes to be unlawful, even if the sentence suits the crime.

Prior to the change of plea hearing in this case, the court notified government and defense counsel of a concern with the plea agreement. The facts described in the statement of factual basis described one single impulse, a single course of action, yet the plea agreement contemplated cumulative punishment for two separate crimes. The court informed counsel that it was concerned about a potential violation of the double jeopardy clause. Preliminary research had revealed the case of United States v. Chipps, which the court shared with counsel. United States v. Chipps, 410 F.3d 438 (8th Cir. 2005).

Following the colloquy with counsel prior to the change of plea hearing in this case, Ms. Red Shirt's defense attorney did not examine the legality of the sentence at all. It was not in his client's interests to undo what is, on its face, a plea agreement that is very favorable to the defendant.

The Assistant United States Attorney did explore the issue and reported back to the court orally that he was comfortable with the legality of the agreement. However, no brief was provided and no legal authority. The gist of the government's position was that there was an element required for one offense that Ms. Red Shirt pleaded guilty to that was not an element required for the other offense. However, that does not appear to this court to be the whole of the analysis.

The double jeopardy clause forbids sequential multiple prosecutions for the same offense by the same sovereign following an initial acquittal or conviction on the original offense. Brown v. Ohio, 432 U.S. 161, 165 (1977). It also protects against multiple punishments for the same offense. Id. Whether multiple punishments for a single act or transaction violates the double jeopardy clause is determined in the first instance by Congress. Chipps, 410 F.3d at 448. If Congress has unambiguously indicated by statute that it intends to allow cumulative punishment for the same act or transaction, then cumulative punishments are allowed. Id.; United States v. Doffin, 791 F.2d 118, 120-21 (8th Cir. 1986). However, where there is no clear congressional intent, courts determine whether cumulative punishment violates the double jeopardy clause by applying the Blockburger test. See Blockburger v. United States, 284 U.S. 299 (1932).

The Blockburger test, as set forth most recently by the Eighth Circuit in United States v. Grimes, is as follows:

> Where "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether ***each*** provision requires proof of a fact which the other does not." Blockburger, 284 U.S. at 304. Under this so-called same-elements test–sometimes referred to as the Blockburger test–unless the two offenses ***each*** contain an element not found ***in the other***, they are the same offense and double jeopardy bars additional punishment.

United States v. Grimes, No. 11-3702, 2012 WL 6633864, at *4 (8th Cir. Dec. 21, 2012) (emphasis supplied).

When there is a greater offense, and a lesser included offense, the two offenses are considered the same under the Blockburger test for double jeopardy. Brown, 432 U.S. at 168-69. For example, the crime of auto theft and the crime of joyriding are a greater and a lesser included offense under Ohio law and a defendant cannot, consistent with Double Jeopardy analysis, be convicted of both for a single act of taking a single car. Id. at 169-70.

Here, Ms. Red Shirt has been charged with and has pleaded guilty to two separate offenses: assault by striking, beating or wounding, and simple assault. There are no Eighth Circuit Pattern Jury Instructions defining these two crimes. They are both found at 18 U.S.C. § 113, which also defines the felony assault charges that Ms. Red Shirt was originally charged

6

with, assault resulting in serious bodily injury and assault with a dangerous weapon. The statute itself does not evince a congressional intent to allow cumulative punishments for the same act, nor does the legislative history. See 18 U.S.C. § 113; cf. Chipps, 410 F.3d at 448-49.

Under the Blockburger test, then, the court must begin by examining the elements of both of these offenses. Importantly, the analysis is of the elements of the two offenses; it is not an analysis of the conduct proved at trial or in the factual basis statement. Schmuck v. United States, 489 U.S. 705, 716-17 (1989). The elements of the offenses Ms. Red Shirt pleaded guilty to are not defined by statute.

The court looks to jury instructions that have been given in this district in the past, and to Eighth Circuit case law. The elements of assault by striking, beating, and wounding are:

1. The defendant unlawfully assaulted the victim by striking, beating, and wounding that person;
2. That the defendant is an Indian person; and
3. That the offense took place in Indian Country, in the District of South Dakota.

The elements of the offense of simple assault are:

1. The defendant assaulted the victim;
2. That the defendant is an Indian person; and

3. That the offense took place in Indian Country, in the District of South Dakota.

Both of these definitions of the elements of the two crimes are unhelpful in that they attempt to define "assault" by using the term "assault." Neither recitation of the elements tells what an "assault" is.

"Assault" is defined by Black's Law Dictionary as an attempt to commit a battery or a threat to commit a battery such that the victim has a reasonable apprehension of imminent harmful or offensive contact. BLACK'S LAW DICTIONARY 109 (7th ed. 1999). This is in accord with the definition of "assault" that has been given in jury instructions in this district.

> An assault is any intentional and voluntary attempt or threat to do injury to the person of another, when coupled with the apparent present ability to do so sufficient to put the person against whom the attempt is made in fear of immediate bodily harm.

See United States v. Benjamin Godfrey Chipps, Sr., CR 01-50022, aff'd in part, vacated in part sub nom, United States v. Chipps, 410 F.3d 438 (8th Cir. 2005)).

Courts that have interpreted the crime of simple assault under § 113(a)(5) have turned to the common law for guidance since Congress did not further define the offense. United States v. Shabani, 513 U.S. 10, 13 (1994); Chipps, 410 F.3d at 448; United States v. Delis, 558 F.3d 177, 179 (2d Cir. 2008); United States v. Bayes, 210 F.3d 64, 68 (1st Cir. 2000);

8

United States v. Guilbert, 692 F.2d 1340, 1343 (11th Cir. 1982).  Neither the crime of simple assault nor the crime of assault by striking, beating or wounding requires that the defendant had an intent to injure.  Delis, 558 F.3d at 179-80; Bayes, 210 F.3d at 68-69.

At common law, a battery was "the unlawful application of force to the person of another," which includes offensive touching.  Delis, 558 F.3d at 180.  Common law assault was either the attempt to commit a battery, or the threat to inflict a battery upon another such as to put the other in reasonable fear of physical injury.  Id.  This definition of assault is in accord with the definition of assault that has been used in jury instructions in this district, as recited above.  As can be seen by examining these definitions, a battery necessarily also includes an assault.  Delis, 558 F.3d at 181.  The battery is the greater crime and the assault is the lesser included crime.  Id.

Under § 113(a)(4), assault by striking, beating or wounding, the elements of that offense require that the defendant have either struck, beat, or wounded the victim.  Thus, it requires that contact have been made between the defendant and the victim.  United States v. Estrada-Fernandez, 150 F.3d 491, 494 (5th Cir. 1998).  This is the codification of at least some forms of common law battery.  Delis, 558 F.3d at 182; Estrada-Fernandez,

150 F.3d at 495; Guilbert, 692 F.2d at 1344; United States v. Stewart, 568 F.2d 501, 504 (6th Cir. 1978).[2]

Simple assault, as can be seen by the definitions discussed above, does not require proof that contact was made between the defendant and the victim. All that is required is that the defendant attempted to make contact, i.e. attempted to commit a battery, or that the defendant threatened to make contact in a way that provoked a reasonable fear of physical harm in the victim. Therefore, like the common law concepts of battery and assault, it is clear that simple assault under § 113(a)(5) is a lesser included offense of assault by striking, beating, or wounding under § 113(a)(4). As such, cumulative punishments for both crimes–absent clear congressional intent to so provide–would violate the double jeopardy clause. Brown, 432 U.S. at 168-69. The court has found no congressional intent set forth in the statute that would indicate that cumulative punishments for both of these offenses is intended and allowed.

Returning to the Blockburger test, it is clear that the elements of the crime of assault by striking, beating, or wounding includes an element not required under the elements of simple assault: the element that the

---

[2]It does not codify all forms of common law battery. For example, an offensive patting, squeezing or groping of a sexual nature would also constitute a common law battery, but would not constitute assault by striking, beating, or wounding. Delis, 558 F.3d at 181-82.

defendant have struck, beat, or wounded the victim. However, that is only one-half of the formulation of the Blockburger test. *Both* formulations of the elements of *both* crimes must have an element that the other does not. Here, the crime of simple assault–because it is a lesser included offense of battery–does not have an element that is not also part of the elements of assault by striking, beating or wounding. Every element of simple assault is also an element of battery. Therefore, the Blockburger requirement that *each* crime have an element that is not found in the elements of the other is not met. Brown, 432 U.S. at 168-69.

    A final observation is in order. There is a paucity of appellate authority considering these two crimes and what their elements are. Class B misdemeanors are not often appealed. Also, this is partially the result of the fact that one must make reference to common law here, and the common law often conflated the concepts of assault and battery. Delis, 558 F.3d at 181. In addition, some of the authority the court found is conflicting, with some courts holding that the crime of simple assault is encompassed in the crime of battery and other courts holding the opposite. Id.

    The court returns to the basic principles which prompted it to make inquiry in the first place: the facts here clearly show a single course of action by Ms. Red Shirt and the statute does not clearly indicate that

11

Congress intended for there to be cumulative punishment for each of these separate crimes, though the facts may support a conviction on each crime. When faced with a similar quandary in the Chipps case, the Eighth Circuit applied the rule of lenity to resolve the doubt in favor of the defendant. Chipps, 410 F.3d at 449. The Chipps court applied the "impulse test" which provides that the court "treat as one offense all violations that arise from that singleness of thought, purpose or action, which may be deemed a single 'impulse.' " Id. This court likewise finds it appropriate to apply the rule of lenity and to punish Ms. Red Shirt once for a single offense for this continuous course of conduct in which she engaged.

Accordingly, the court concludes that Ms. Red Shirt cannot stand convicted of both simple assault and assault by striking, beating, and wounding for the same single course of conduct. Based on the law, then, the court will vacate Ms. Red Shirt's conviction for simple assault. On the remaining conviction for assault by striking, beating, or wounding, the court imposes the maximum penalty allowed, which is six months imprisonment.

## CONCLUSION

Based on the foregoing, it is hereby

ORDERED that the conviction previously entered on the charge of simple assault as to Ms. Red Shirt is vacated. On the remaining conviction

on the charge of assault by beating, striking, or wounding, Ms. Red Shirt is sentenced as set forth in the judgment of conviction filed in this case.

Dated January 3, 2013.

BY THE COURT:

/s/ *Veronica L. Duffy*
VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE